IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| SBMC HEALTHCARE, LLC, | § | BANKRUPTCY NO. 12-33299-H4-11 |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| MARTY McVEY, Individually, and | § | |
| McVEY & CO. INVESTMENTS, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADVERSARY NO. 14-03126 |
| | § | |
| MILLARD A. JOHNSON, | § | |
| Individually, and JOHNSON, | § | |
| DeLUCA KURISKY & GOULD, P.C., | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| MILLARD A. JOHNSON, | § | |
| Individually, and JOHNSON, | § | |
| DeLUCA KURISKY & GOULD, P.C., | § | |
| | § | |
| Appellants, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 16-2947 |
| | § | |
| MARTY McVEY, Individually, and | § | |
| McVEY & CO. INVESTMENTS, LLC, | § | |
| | § | |
| Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

Appellants, Millard A. Johnson ("Johnson"), individually, and Johnson DeLuca Kurisky & Gould, P.C. ("JDKG") ("Appellants" or "Defendants" in the Bankruptcy Court proceedings), appeal three orders and one set of findings of facts and conclusions of law entered by the Bankruptcy Court in Adversary No. 14-03126:

the September 18, 2014, Order: (1) Granting in Part and Denying in Part the Defendants' Motion to Dismiss; (2) Denying the Trust's Motion to Intervene in Its Entirety; (3) Granting in Part and Denying in Part the Plaintiffs' Motion for Remand ("Order of Partial Dismissal and Remand," Adversary Docket Entry No. 46);[1]

the October 30, 2014, Order: (1) Granting in Part and Carrying in Part Defendants' Motion to Amend or for Clarification of Judgment of Partial Dismissal and Remand Pursuant to Bankr. R. Pro. 9023; (2) Reopening the Record to Allow the Parties to Introduce Exhibits and Adduce Testimony; and (3) Setting a Hearing for 9:30 A.M. on December 12, 2014 ("Order of Partial Reopening of Adversary," Docket Entry No. 55);[2]

the September 21, 2016, Order Denying in Its Entirety the Defendants' Motion to Amend or for Clarification of Judgment of Partial Dismissal and Remand Order Pursuant to Bankr. R. Pro. 9023 ("Order Denying Motion to Amend or Clarify," Adversary Docket Entry No. 121);[3] and

the September 26, 2016, Amended Findings of Fact and Conclusions of Law Regarding the Defendants' Motion to Amend or for Clarification of Judgment of Partial Dismissal and Remand Order Pursuant to Bankruptcy Rule 9023 ("Amended Findings of Fact and Conclusions of Law"), Adversary Docket Entry No. 124).[4]

---

[1] Exhibit 1 to Notice of Filing of an Appeal, Docket Entry No. 1-2. See also Appellants' Opening Brief, Docket Entry No. 8, p. 1 (citing Appellants' Bankruptcy Record on Appeal ("Appellants' BROA"), Docket Entry No. 2-2, pp. 290-292). Although Appellants have appealed the September 18, 2014, Order of Partial Dismissal and Remand, Appellants have not appealed the Memorandum Opinion Regarding Defendants' Motion to Dismiss, the Trust's Motion to Intervene, and Plaintiffs' Motion for Remand ("Memorandum Opinion"), issued on the same date stating reasons for the rulings set forth in the Order of Partial Dismissal and Remand. See Appellants' BROA, pp. 256-89; and In re SBMC Healthcare, LLC, 519 B.R. 172 (Bankr. S.D. Tex. 2014).

[2] Exhibit 2 to Notice of Filing of an Appeal, Docket Entry No. 1-3. See also Appellants' BROA, Docket Entry No. 2-2, pp. 330-45.

[3] Exhibit 3 to Notice of Filing of an Appeal, Docket Entry No. 1-4. See also Appellants' BROA, Docket Entry No. 2-2, pp. 1,669-70.

[4] Exhibit 4 to Notice of Filing of an Appeal, Docket Entry
(continued...)

Two designations of record have been filed: Appellants' Bankruptcy Record on Appeal (Docket Entry No. 2; "Appellants' BROA"); and Appellees' Bankruptcy Record on Appeal (Docket Entry No. 3; "Appellees' BROA").[5] Pending before the court are Appellants' Opening Brief (Docket Entry No. 8), Appellees' Brief (Docket Entry No. 13), and Appellants' Reply Brief (Docket Entry No. 14).[6] For the reasons explained below, all of the Bankruptcy Court's orders and findings of fact and conclusions of law will be affirmed.

## I. Factual and Procedural Background

This case arises out of the Chapter 11 bankruptcy of SBMC Healthcare LLC ("SBMC" or "Debtor") d/b/a Spring Branch Medical Center styled In re SBMC Healthcare, LLC, Cause Number 12-33299-H4-11. SBMC's bankrutpcy case was initiated on April 30, 2012, when Appellants filed a Chapter 11 petition as attorneys for SBMC.[7] On May 1, 2012, SBMC filed a request with the Bankruptcy Court that

---

[4](...continued)
No. 1-5. See also Appellants' BROA, Docket Entry No. 2-2, pp. 1,671-1,709.

[5]Page citations to the Bankruptcy Court documents included in these filings are to the pagination imprinted by the federal court's electronic filing system at the top right corner of the document.

[6]Page citations to the parties' briefs are to the native page numbers at the bottom of the page.

[7]Appellees' Brief, Docket Entry No. 13, p. 5. See also Voluntary Petition, Docket Entry No. 1 in Bankruptcy Case No. 12-33299-H4-11.

Appellants be employed as general bankruptcy counsel.[8]  On May 25, 2012, SBMC filed an amended request with the Bankruptcy Court that Appellants be employed as special bankruptcy counsel along with Marilee A. Madan, P.C., as bankrutpcy co-counsel.[9]  SBMC's request and amended request to employ Appellants as bankruptcy counsel rested in part, on assertions that Appellants had previously agreed to represent SBMC in a number of matters including:

- Cause No. 2011-26442; *Greater Houston Emergency Physicians, PLLC v. SBMC Healthcare, LLC d/b/a Spring Branch Medical Center*, pending in the 127th Judicial District Court, Harris County, Texas ["GHEP Action"];

. . .

- Cause No. 2012-20333; *Harborcove Financial, LLC v. SBMC Healthcare, LLC, et al.*, pending in the 80th Judicial District Court of Harris County, Texas ["Harborcove Action"].[10]

Both SBMC's original and amended requests to employ Appellants as bankruptcy counsel also stated:

Except as set forth above and in the attached affidavit, the Firm has no other connection with the Debtor, its

---

[8]Application to Employ Johnson DeLuca Kurisky & Gould, P.C., as Bankruptcy Counsel Pursuant to 11 U.S.C. §§ 327 and 328(a), Appellants' BROA, Docket Entry No. 2-2, pp. 3,927-3,932.

[9]Amended Application to Employ Johnson DeLuca Kurisky & Gould, P.C., as Special Bankruptcy Counsel Pursuant to 11 U.S.C. §§ 327 and 328(a), Appellants' BROA, Docket Entry No. 2-2, pp. 3,621-3,627.

[10]Id. at p. 3,624 ¶ 9.  See also Application to Employ Johnson DeLuca Kurisky & Gould, P.C., as Bankruptcy Counsel Pursuant to 11 U.S.C. §§ 327 and 328(a), Appellants' BROA, Docket Entry No. 2-2, p. 3,930 (same).

creditors, any other parties in interest, their
respective attorneys and accountants, the United States
trustee, or any person employed in the office of the
United States trustee and are "disinterested persons"
within the definition of Section 101(14) of the
Bankruptcy Code on the matters for which it is to be
engaged as special counsel. A copy of the Affidavit is
attached and incorporated herein as **Exhibit 1**.[11]

The affidavits of proposed counsel attached to both SBMC's original

and amended requests to employ Appellants similarly stated:

> . . . the Firm has represented the Debtor prior to
> this bankruptcy case. The Firm has represented the
> Debtor in the following matters:
>
> - Cause No. 2011-26442; *Greater Houston
>   Emergency Physicians, PLLC v. SBMC Healthcare,
>   LLC d/b/a Spring Branch Medical Center*,
>   pending in the 127th Judicial District Court,
>   Harris County, Texas ["GHEP Action"];
>
>         . . .
>
> - Cause No. 2012-20333; *Harborcove Financial,
>   LLC v. SBMC Healthcare, LLC, et al.*, pending
>   in the 80th District Court of Harris County,
>   Texas ["Harborcove Action"]; . . .
>
> The Firm does not believe that the above disclosure
> presents any conflict that would preclude its unbiased
> representation of the Movant and the estate in this case
> in its proposed role as bankruptcy counsel.[12]

---

[11]Amended Application to Employ Johnson DeLuca Kurisky & Gould,
P.C., as Special Bankruptcy Counsel Pursuant to 11 U.S.C. §§ 327
and 328(a), Appellants' BROA, Docket Entry No. 2-2, pp. 3,625 ¶ 10.
See also Application to Employ Johnson DeLuca Kurisky & Gould,
P.C., as Bankruptcy Counsel Pursuant to 11 U.S.C. §§ 327 and
328(a), Appellants' BROA, Docket Entry No. 2-2, p. 3,930 ¶ 10
(same).

[12]Affidavit of Proposed Counsel Pursuant to 11 U.S.C. § 329(a)
and Bankruptcy Rules 2014, 2016(b), Appellants' BROA, Docket Entry
No. 2-2, pp. 3,628 (affidavit attached to amended application); and
3,934 (affidavit attached to original application).

On June 18, 2012, the Bankruptcy Court approved SBMC's amended request that Appellants serve as special bankruptcy counsel.[13]

On March 25, 2013, the First Amended Plan of Liquidation by the Official Committee of Unsecured Creditors and Joint Plan of Liquidation of the Committee and SBMC Healthcare, LLC ("the Plan") was filed in SBMC's bankrutpcy.[14] The Plan created a liquidating trust ("SBMC Liquidating Trust" or the "Trust") to liquidate the Debtor's assets,[15] and contained a section titled, "Releases and Limitation of Liability of Exculpated Persons" ("Release of Exculpated Persons").[16] On April 4, 2013, the Bankruptcy Court confirmed the Amended Plan of Liquidation.[17]

Appellee Marty McVey ("McVey") was SBMC's president and 100% equity owner. McVey personally guaranteed some of SBMC's financial obligations. Appellee McVey & Company Investments ("M&C") is a company controlled by McVey that performed management services for SBMC.[18] McVey and M&C are referred to herein as "Appellees" and

---

[13]Order Granting Amended Application to Employ Johnson DeLuca Kurisky & Gould P.C. as Special Bankruptcy Counsel to the Debtor Pursuant to 11 U.S.C. §§ 327 and 328(a) [Relates to Docket No. 101], Appellants' BROA, Docket Entry No. 2-2, pp. 3,659-3,663.

[14]Appellants' BROA, Docket Entry No. 2-2, pp. 3,828-3,876.

[15]Id. at pp. 3,835-36, and pp. 3,856-66.

[16]Id. at pp. 3,819-20.

[17]Order Confirming First Amended Plan of Liquidation by the Official Committee of Unsecured Creditors and Joint Plan of Liquidation of the Committee and SBMC Healthcare, LLC, Appellants' BROA, Docket Entry No. 2-2, pp. 4,527-4,549.

[18]Appellants' Opening Brief, Docket Entry No. 8, p. 5;
(continued...)

"Plaintiffs" in reference to the Bankruptcy Court proceedings. McVey was named as a defendant along with SBMC in both the GHEP and Harborcove actions, and M&C was named as an additional defendant in the GHEP Action. Appellants filed prepetition answers in the GHEP Action for SBMC, McVey, and M&C on February 13, 2012, and filed prepetition answers in the Harborcove Action for SBMC and McVey on April 27, 2012.[19] On April 27, 2012, Appellants also drafted a written agreement to forestall foreclosure in the Harborcove Action ("the Rule 11 Agreement") pursuant to which Harborcove agreed to forego the foreclosure sale posted for May 1, 2012, and not to post any SBMC property for foreclosure for a period of 120 days if a payment of $1,525,000.00 was made on SBMC's outstanding debt by April 30, 2012 ("Rule 11 Payment").[20] When on April 30, 2012, the Rule 11 Payment was not made, McVey and SBMC forestalled foreclosure by having Appellants file SBMC's Chapter 11 petition.[21]

---

[18](...continued)
Appellees' Brief, Docket Entry No. 13, p. 3.

[19]Appellants' Opening Brief, Docket Entry No. 8, p. 6 (citing Appellants' BROA, Docket Entry No. 2-2, pp. 3,691-3,695 (Defendant's Verified Original Answer filed on behalf of Marty McVey in the GHEP Action), and pp. 3,753-3,756 (Original Answer for Defendant Marty McVey filed in the Harborcove Action).

[20]April 27, 2012, Letter Agreement, Appellants' BROA, Docket Entry No. 2-2, pp. 94-96. See Appellants' Opening Brief, Docket Entry No. 8, p. 7; Appellees' Brief, Docket Entry No. 13, p. 4.

[21]Appellees' Brief, Docket Entry No. 13, p. 5. See also Voluntary Petition, Docket Entry No. 1 in Bankruptcy Case No. 12-33299-H4-11.

Appellants continued to represent both SBMC and McVey in the Harborcove Action until August of 2013 when Appellants moved to withdraw,[22] and the state court granted their motion to withdraw on August 9, 2013.[23]

On March 10, 2014, Appellees filed suit against Appellants in the 270th Judicial District Court of Harris County, Texas ("State Court Action"), asserting claims for negligence/legal malpractice, breach of fiduciary duty, and violations of the Texas Deceptive Trade Practices Act (DTPA).[24] Appellees describe their petition as having alleged that

> Appellants were negligent in drafting the Rule 11 Agreement, which was designed to forestall the foreclosure proceedings, in that it permitted Harborcove to sell its note to a third party who could then foreclose on the collateral. Appellees allege that Appellants failed to file an action to prevent the foreclosure and, instead, coerced McVey into forcing SBMC into bankrutpcy. Appellees allege that once in bankruptcy, SBMC's assets were liquidated for pennies on the dollar and various creditors, including the IRS, were not paid. As a result, these creditors and the IRS sued

---

[22]Counsel for SBMC Healthcare, LLC and Marty McVey's Motion to Withdraw filed on August 5, 2013, in Cause No. 2012-20333, Appellants' BROA, Docket Entry No. 2-2, pp. 3,757-3,760 (see especially p. 3,757 ¶ 1 stating: "The law firm of Johnson DeLuca Kurisky & Gould, P.C. ('JDKG'), counsel for SBMC Healthcare, LLC and Marty McVey, appeared on SBMC Healthcare, LLC and Marty McVey's behalf on or about April 27, 2012.").

[23]Order on Counsel for SBMC Healthcare, LLC and Marty McVey's Motion to Withdraw in Cause No. 2012-20333, Appellants' BROA, Docket Entry No. 2-2, pp. 3,761-3,762 (granting JDKG's motion to withdraw as counsel for SBMC and McVey on August 9, 2013).

[24]Plaintiffs' Original Petition & Request for Disclosure, Appellants' BROA, Docket Entry No. 2-2, pp. 80-92.

(or filed liens against) McVey and M&C in their personal capacity for their personal obligations. Appellees allege that but for Appellants' erroneous advice and breach of fiduciary duties, McVey would have been able to consummate a deal to pay SBMC's creditors without bankruptcy, would not have incurred the personal obligations, judgments and attorney's fees but, as owner of SBMC, would have obtained equity from the sale of SBMC.[25]

On April 21, 2014, Appellants initiated Adversary No. 14-03126 by removing Appellees' State Court Action to Bankruptcy Court pursuant to 28 U.S.C. § 1452, Federal Rule of Bankruptcy Procedure 9027, and Bankruptcy Local Rule 9027-1.[26]

On April 25, 2014, Appellants filed a Motion to Dismiss Adversary No. 14-03126 arguing that (1) Appellees lacked standing because their claims belonged to the Debtor, SBMC, and any damages Appellees suffered were derivative of damages suffered by SBMC; and (2) Appellees' claims were barred by the Release of Exculpated Persons contained in SBMC's confirmed Plan.[27] On May 16, 2014, Appellees responded that the claims at issue were not derivative of the Debtor's claims because Appellants had individual attorney-client relationships with Appellees, Appellants breached duties

---

[25]Appellees' Brief, Docket Entry No. 13, pp. 10-11 (citing Plaintiffs' Original Petition & Request for Disclosure, Appellants' BROA, Docket Entry No. 2-2, pp. 84-87).

[26]Notice of Removal, Appellants' BROA, Docket Entry No. 2-2, pp. 1-7.

[27]Defendants' Motion to Dismiss Pursuant to Bankruptcy Rule of Procedure 7012(b)(1) and (6), and Memorandum in Support of Defendants' Motion to Dismiss Pursuant to Bankr. R. P. 7012(b)(1) and (6), Appellants' BROA, Docket Entry No. 2-2, pp. 8-20.

owed to Appellees because of those attorney/client relationships, and Appellants' breaches proximately caused Appellees to suffer injuries and damages separate and distinct from injuries and damages suffered by SBMC.[28]

On April 29, 2014, the SBMC Liquidating Trust filed a Motion to Intervene arguing that it, as owner, successor-in-interest, and holder of all causes of action of the Debtor, and former debtor-in-possession, owned the causes of action that Appellees asserted in the State Court Action.[29]

On May 8, 2014, Appellees filed a Motion to Remand, arguing that the Bankruptcy Court lacked subject matter jurisdiction over the claims asserted in the State Court Action or, alternatively, that the Bankruptcy Court should mandatorily or permissively abstain from hearing the dispute.[30]

---

[28]Plaintiffs' Response to Defendants' Motion to Dismiss Pursuant to Bankruptcy Rule of Procedure 7012(b)(1) and (6) and Plaintiffs' Memorandum in Support of Plaintiffs' Response to Defendants' Motion to Dismiss Pursuant to Bankruptcy Rule of Procedure 7012(b)(1) and (6), to Appellants' BROA, Docket Entry No. 2-2, pp. 115-35.

[29]SBMC Liquidating Trust's Motion to Intervene, Docket Entry No. 10 in Adversary No. H-14-03126.

[30]Plaintiffs' Motion to Remand or, Alternatively, Motion to Abstain, and Plaintiffs' Memorandum in Support of Their Motion to Remand or, Alternatively, Motion to Abstain, Appellants' BROA, Docket Entry No. 2-2, pp. 21-51.

On June 4, 2014, and June 12, 2014, the Bankruptcy Court held hearings on Appellants' motion to dismiss, the SBMC Liquidating Trust's motion to intervene, and Appellees' motion to remand.[31]

On September 18, 2014, the Bankrutpcy Court granted in part and denied in part Appellants' motion to dismiss and Appellees' motion to remand, and denied the SBMC Liquidating Trust's motion to intervene.[32] The Bankruptcy Court granted Appellants' motion to dismiss "all causes of action brought by the [Appellees] alleging injury due to the devaluation of SBMC stock,"[33] dismissed those claims with prejudice, and denied Appellees' motion to remand those claims.[34] The Bankruptcy Court denied Appellants' motion to dismiss "all causes of action brought by the [Appellees] alleging direct injury to them due to negligence, breach of fiduciary duty and violation of the Texas [DTPA],"[35] and remanded those claims to state court.[36] The Bankruptcy Court explained the reasons for these rulings in a Memorandum Opinion issued on the same day, In re SBMC

---

[31]Transcript of Hearing held on June 4, 2014, in Adversary No. 14-03126-H4-ADV, Appellants' BROA, Docket Entry No. 2-2, pp. 1,434-1,491; Transcript of Hearing held on June 12, 2014, in Adversary No. 14-03126-H4-ADV, Appellants' BROA, Docket Entry No. 2-2, pp. 1,492-1,576.

[32]Order of Partial Dismissal and Remand, Exhibit 1 to Notice of Filing of an Appeal, Docket Entry No. 1-2. See also Appellants' BROA, Docket Entry No. 2-2, pp. 290-92.

[33]Id. at p. 2. See also Appellants' BROA, p. 291.

[34]Id. See also Appellants' BROA, p. 291.

[35]Id. See also Appellants' BROA, p. 291.

[36]Id. See also Appellants' BROA, p. 291.

<u>Healthcare, LLC</u>, 519 B.R. 172 (Bankr. S.D. Tex. 2014).[37]  In

pertinent part the Bankruptcy Court stated as follows:

> Defendants plead that, even if all facts are taken
> as true, Plaintiffs lack standing to assert the causes of
> action in the Complaint and therefore dismissal is
> appropriate. . . Defendants argue that McVey suffered
> only indirect harm on account of his status as
> shareholder of the Debtor, and thus these causes of
> action are derivative of SBMC. . . Defendants further
> assert that all Plaintiffs' causes of action could have
> been brought by SBMC as of the Petition Date, making them
> property of the Debtor's estate, or more precisely the
> Trust, pursuant to § 541(a)(1) of the Code. . . This
> argument fails to take into account that the complaint
> alleges that Plaintiffs suffered personal injury when
> creditors of SBMC sued McVey and M&C in their individual
> capacities as guarantors of SBMC's debts.
>
> Moreover, even if the Debtor (or, as of now, the
> Trust) has derivative claims, it does not preclude a
> third-party's direct causes of action based on the same
> underlying transaction or occurrence.  As Plaintiffs
> point out, "it is entirely possible for a bankruptcy
> estate and a creditor to own separate claims against a
> third party arising out of the same general series of
> events and broad coarse of conduct." *In re Seven Seas
> Petroleum, Inc.*, 522 F.3d 575, 585 (5th Cir. 2008). . .
> Accordingly, as set forth below, this Court will dismiss
> the derivative claims asserted in the Complaint, but will
> not dismiss those claims in the Complaint that are the
> direct claims of the Plaintiffs.

. . .

### b.  *Direct Causes of Action*

> Plaintiffs assert personal injuries in the Complaint
> and therefore have direct causes of action.  The
> Complaint alleges that Plaintiffs had a personal
> attorney-client relationship with Defendants during which
> Defendants breached their fiduciary duty to Plaintiffs by
> negligently advising McVey to file a Chapter 11

---

[37]September 18, 2014, Memorandum Opinion, Appellants' BROA,
Docket Entry No. 2-2, pp. 256-289.

bankrutpcy on behalf of SBMC. . . As a result of Defendants' alleged negligence, Plaintiffs contend that they suffered losses when unpaid SBMC creditors sued Plaintiffs, in their individual capacities as guarantors, to recover obligations owed by SBMC. . . In connection with these lawsuits, Plaintiffs incurred defense costs and had judgments entered against them personally after SBMC failed to pay the debts through its bankruptcy. . . The harm that Plaintiffs allegedly sustained in connection with lawsuits filed against them in their individual capacities is personal and entirely distinct from any harm suffered by SBMC. Therefore, Plaintiffs' causes of action against Defendants for negligence, breach of fiduciary duty, and violation of the DTPA that are based on suits filed against them by SBMC creditors are Plaintiffs' direct causes of action that should not be dismissed. *In re Skyport Communications Inc.*, 2011 WL 111427 (Bankr. S.D. Tex. Jan. 13, 2011) (holding that dismissal is proper for a derivative cause of action, but not for a direct cause of action).

### c. *Derivative Causes of Action*

The Complaint also asserts injury based on loss of value to SBMC stock, a derivative cause of action belonging to SBMC — the corporation — or, more precisely, SBMC's estate. Specifically, Plaintiffs allege that the total debt owed by SBMC was approximately $8 million and that McVey was negotiating a letter of intent to sell SBMC's real property for $15 million. . . The Complaint asserts that, as a result of SBMC's bankruptcy filing: (1) McVey lost the opportunity to sell SBMC's real property and assets to recover their fair market value; (2) SBMC's assets were liquidated at bottom dollar; and (3) no other creditors but Harborcove — and certainly not McVey, the 100% shareholder of SBMC — received any proceeds from the liquidation. . .

Inasmuch as the Complaint quantifies the harm suffered by McVey as the loss of value to his SBMC shares, it is not distinct from harm suffered by SBMC, the corporation. A claim of loss for devaluation of stock is a derivative cause of action that belongs exclusively to SBMC, the corporation, or, in this case, SBMC's estate (i.e. the Trust). Thus, McVey, as "individual stockholder[,] ha[s] no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of [his] stock." *Wingate[ v. Hajdik]*, 795 S.W.2d [717],

-13-

719 [(Tex. 1990), *superseded by statute on other grounds as stated in Sneed v. Webre*, 465 S.W.3d 169 (Tex. 2015)] . . . . Because the causes of action based on devaluation of SBMC stock are derivative, they belong exclusively to SBMC's estate and should be dismissed for lack of standing.

### d.    Conclusion

Assuming, as this Court must, that all allegations in the Complaint are true, the Motion to Dismiss will be denied as to the direct causes of action and granted as to the derivative causes of action. Plaintiffs have direct causes of action for malpractice, breach of fiduciary duty, and violation of the DTPA based on allegations of personal injury suffered in connection with lawsuits filed against them individually. These claims will not be dismissed. In contrast, Plaintiffs' causes of action for malpractice, breach of fiduciary duty, and violation of the DTPA based on devaluation of SBMC stock are derivative of the Debtor's estate. These claims will be dismissed with prejudice as to the Plaintiffs for lack of standing.[38]

Id. at 182-85. The Bankruptcy Court denied the Trust's motion to intervene for failure to plead a cause of action.[39] Id. at 185. The Bankruptcy Court denied the Appellees' motion to remand the derivative claims that the court dismissed, and granted the Appellees' motion to remand their direct claims upon concluding that it lacked subject matter jurisdiction over the direct claims, and alternatively, that even if it had subject matter jurisdiction, remand was appropriate because the state court had concurrent jurisdiction and permissive abstention was appropriate with respect to the direct claims.[40] Id. at 185-93.

---

[38]Id. at pp. 13-18, Appellants' BROA, pp. 268-273.

[39]Id. at pp. 19-20, Appellants' BROA, pp. 274-75.

[40]Id. at pp. 20-33, Appellants' BROA, pp. 275-88.

On September 24, 2014, Appellants moved the Bankruptcy Court to reconsider its September 18, 2014, Order of Partial Dismissal and Remand and to clarify

> (1) that any claim by [Appellees] that they have become or will become liable to creditors by virtue of SBMC Healthcare LLC's inability to pay or have incurred cost in defending such claims is a derivative claim which is dismissed; and (2) that the [Appellants'] decision to advise [Appellees] to commence a bankruptcy filing for SBMC Healthcare LLC is released by the Plan of Reorganization.[41]

Appellants acknowledged that "[o]ther narrower claims implied by the pleading are presumed to be true for now and appear to still require remand."[42] Appellees responded that if the Plan's Release was broad enough to cover pre-petition advice, the Release is invalid because Appellants negotiated it while they had attorney-client relationships with Appellees without making disclosures required by the Texas Disciplinary Rules of Professional Conduct.[43]

On October 30, 2014, the Bankruptcy Court entered the Order of Partial Reopening of Adversary granting in part and carrying in part Appellants' motion for reconsideration, stating:

---

[41]Defendants' Motion to Amend or for Clarification of Judgment of Partial Dismissal and Remand Pursuant to Bankr. R. Pro. 9023 ("Appellants' Motion to Amend or Clarify"), p. 10, Appellants' BROA, Docket Entry No. 2-2, p. 302.

[42]Id.

[43]Plaintiffs' Response to Defendants' Motion to Amend or for Clarification of Judgment of Partial Dismissal and Remand Pursuant to Bankr. R. Proc. 9023, p. 8, Appellants' BROA, Docket Entry No. 2-2, p. 314.

Defendants ask this Court to reconsider: (1) its classification of certain of Plaintiffs' claims as direct, as opposed to derivative; and (2) its interpretation of a provision that limits the liability of the Defendants (the Exculpatory Provision) in the Plan.[44]

Regarding the nature of the Appellees' state court claims, the Bankruptcy Court stated:

Defendants ask this Court to reconsider its demarcation between Plaintiffs' direct claims (those based on suits filed against them by SBMC creditors) and Plaintiffs' derivative claims (those based on loss of value to SBMC stock). After considering the Motion to Amend, the Response, and the Reply, this Court concludes that the Memorandum Opinion properly analyzes this issue and reaches the correct result.[45]

As to the Exculpatory Provision, the Bankruptcy Court reopened the record to develop "extrinsic evidence on the [exculpatory] provision's meaning,"[46] and held hearings on December 12 and 15, 2014, and January 27 and 28, 2015.[47] At the initial hearing held

---

[44]Exhibit 2 to Notice of Filing of An Appeal, Docket Entry No. 1-3, p. 3. See also Appellants' BROA, Docket Entry No. 2-2, p. 332.

[45]Id. at p. 4. See also Appellants' BROA, Docket Entry No. 2-2, p. 333.

[46]Id. at p. 6. See also Appellants' BROA, Docket Entry No. 2-2, p. 335.

[47]See Hearing Transcripts, Appellants' BROA, Docket Entry No. 2-2, pp. 954-1,002 (Hearing held on December 12, 2014, #50 — Motion to Amend or For Clarification of Judgment); pp. 366-548 (December 15, 2014, #50 - Continued Hearing on Motion to Amend or for Clarification of Judgment); pp. 549-785 (January 27, 2015, #50 - Continued Hearing on Motion to Amend or for Clarification of Judgment); pp. 786-953 (January 28, 2015, #50 - Continued Hearing on Motion to Amend or for Clarification of Judgment); and pp. 954-
(continued...)

on December 12, 2014, Appellees' counsel argued that the Bankruptcy Court had no jurisdiction to amend its Order of Partial Dismissal and Remand because Appellees' direct claims had already been remanded.[48]   On April 22, 2015, the Bankruptcy Court issued its Order Denying Defendants' Motion to Amend or Clarify, and vacated its October 30, 2014, Order upon concluding that it had no jurisdiction to reconsider its earlier remand order.[49]   That decision was appealed to this court; and the court reversed and remanded the case to the Bankruptcy Court.[50]

On September 26, 2016, without holding additional hearings, the Bankrutpcy Court entered the Order Denying in Its Entirety the Defendants' Motion to Amend or for Clarification of Judgment of Partial Dismissal and Remand Order Pursuant to Bankruptcy Rule of

---

[47](...continued)
1,002 (December 12, 2014, Complete Hearing Transcript on #50 – Motion to Amend or for Clarification of Judgment).

[48]See December 12, 2014, Complete Hearing Transcript on #50 – Motion to Amend or for Clarification of Judgment, Appellants' BROA, Docket Entry No. 2-2, pp. 966-967.

[49]Order Denying Defendants' Motion to Amend or for Clarification of Judgment of Partial Dismissal and Remand Order Pursuant to Bankr. R. Pro. 9023, Appellants' BROA, Docket Entry No. 2-2, pp. 1,428-1,433. See also April 22, 2015, #50 – Ruling, Appellants' BROA, Docket Entry No. 2-2, pp. 1,577-1,584.

[50]March 21, 2016, Memorandum Opinion and Order, Docket Entry No. 20 in Civil Action No. H-15-1173, Appellants' BROA, Docket Entry No. 2-2, pp. 1,585-1,628.

Civil Procedure 923.[51] On September 26, 2016, the Bankruptcy Court entered Amended Findings of Fact and Conclusions of Law Regarding the Defendants' Motion to Amend or for Clarification of Judgment of Partial Dismissal and Remand Order Pursuant to Bankruptcy Rule 9023.[52] In pertinent part the Amended Findings of Fact and Conclusions of Law state:

> The October 30[, 2014], Order addressed the Defendants' request for this Court to reconsider its initial ruling regarding which of the Plaintiffs' claims are derivative claims, and this Court expressly set forth that "after considering the issue in light of the instant pleadings, this Court concludes that the Memorandum Opinion correctly analyzes and sufficiently explains its original holding on this issue." . . . The Court stands by this decision today.[53]

The Bankruptcy Court then analyzed two issues with respect to the meaning of the Exculpatory Provision in SBMC's Plan:

> (1) whether the Exculpatory Provision is broad enough to encompass Johnson advising McVey to file a Chapter 11 petition on behalf of SBMC (i.e., the Malpractice Claim for Filing); and (2) even if the Exculpatory Provision is broad enough to encompass the advice to file, whether the Exculpatory Provision is fair and reasonable to the Plaintiffs such that they should be barred from

---

[51]Notice of Filing of an Appeal, Exhibit 3, Docket Entry No. 1-4. See also Appellants' BROA, Docket Entry No. 2-2, pp. 1,669-70.

[52]Notice of Filing of an Appeal, Exhibit 4, Docket Entry No. 1-5. See also Appellants' BROA, Docket Entry No. 2-2, pp. 1,671-1,709.

[53]Id. at pp. 4-5 (quoting October 30, 2014, Order of Partial Reopening of Adversary, Exhibit 3 to Notice of Filing of an Appeal, Docket Entry No. 1-3, p. 5, Appellants BROA, Docket Entry No. 2-2, p. 334). See also Appellants' BROA, Docket Entry No. 2-2, pp. 1,674-75.

prosecuting the Malpractice Claim for Filing that they allege in the State Court Lawsuit.[54]

In pertinent part the Bankruptcy Court concluded that

the Exculpatory Provision does not encompass the pre-petition communications between McVey and Johnson, including Johnson's advice to McVey to file a Chapter 11 petition on behalf of SBMC; and therefore the Malpractice Claim for Filing should not be dismissed. Alternatively, even if the Exculpatory Provision does encompass the pre-petition communications between McVey and Johnson about the latter's advice to McVey to file SBMC's petition, this Court finds that the Exculpatory Provision is not fair and reasonable to the Plaintiffs and therefore is unenforceable against them; stated differently, the Exculpatory Provision does not release the Defendants from malpractice claims, including the Malpractice Claim for Filing. These findings, as well as this Court's conclusion that the Plaintiffs' so-called "creditors sued me" claims are personal (and not derivative) claims, means that the Motion to Amend should be denied in its entirety. Stated otherwise, the Court finds that the Malpractice Claim for Filing should not be dismissed but rather was correctly remanded, together with the other malpractice claims asserted by the Plaintiffs, to the Harris County District Court, as set forth in the Partial Dismissal and Remand Order.[55]

## II.  Issues on Appeal and Standard of Review

Appellants raise three issues on appeal:

(1)   Did the Bankruptcy Court err when it failed to dismiss all of Appellees' claims as derivative, including those that were based on the personal effect of SBMC's lost equity in bankruptcy?

---

[54]Id. at pp. 5-6.   See also Appellants' BROA, Docket Entry No. 2-2, pp. 1,675-76.

[55]Id. at pp. 38-39.   See also Appellants' BROA, Docket Entry No. 2-2, pp. 1,708-09.

(2)   Did the Bankruptcy Court err in applying, or in its
              application of, state law considerations to create
              artificial barriers to the application of the
              release language of the Confirmed Plan as written?

        (3)   Did the Bankruptcy Court err when it failed to
              dismiss Appellees' claims as barred under the
              release language of the Confirmed Plan?[56]

     The Appellants' motion to dismiss was filed pursuant to
Federal Rule of Civil Procedure 12(b)(1) and (6) (incorporated by
Federal Rules of Bankruptcy Procedure 7012(b)(1) and (6)).[57] When
a Rule 12(b)(1) motion is filed together with other Rule 12
motions, the court should address the jurisdictional attack before
addressing any attack on the merits. Ramming v. United States, 281
F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v.
United States, 122 S. Ct. 2665 (2002) (citing Hitt v. City of
Pasadena, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). "This
requirement prevents a court without jurisdiction from prematurely
dismissing a case with prejudice." Id. The court's dismissal of
a case for lack of subject matter jurisdiction is not a
determination of the merits and does not prevent the plaintiff from
pursuing a claim in a court that has proper jurisdiction. Id. In
examining a Rule 12(b)(1) motion, courts are empowered to consider

_____

        [56]Appellants' Opening Brief, Docket Entry No. 8, pp. 3-4.

        [57]Defendants' Motion to Dismiss Pursuant to Bankruptcy Rule of
Procedure 7012(b)(1) and (6), p. 1, and Memorandum in Support of
Defendants' Motion to Dismiss Pursuant to Bankr. R. P. 7012(b)(1)
and (6), pp. 1-2, Appellants' BROA, Docket Entry No. 2-2, pp. 8,
and 11-12.

matters of fact which may be in dispute. "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Id. (citing Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." Id.

Final judgments, orders, and decrees of a bankruptcy court may be appealed to a federal district court. 28 U.S.C. § 158(a). Because this court functions as an appellate court, it applies the same standard of review that federal appellate courts use when reviewing district court decisions. Accordingly, this court reviews the Bankruptcy Court's findings of fact for clear error and conclusions on questions of law or mixed questions of law and fact de novo. See Garner v. Knoll, Inc. (In re TUSA-ESPO Holdings, Inc.), 811 F.3d 786, 791 (5th Cir. 2016). A bankrutpcy court's dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction is generally reviewed de novo. RLB Contracting, Inc. v. Butler (In re The Complaint of RLB Contracting, Inc.), 773 F.3d 596, 601 (5th Cir. 2014). However, "purely factual findings" by the bankruptcy court in ruling on a Rule 12(b)(1) motion are reviewed for clear error. Id.

### III. Analysis

### A. The Bankrutpcy Court Did Not Err When It Failed to Dismiss All of Appellees' Claims as Derivative

Appellants argue that the Bankruptcy Court erred when it failed to dismiss all of the claims that the Appellees asserted in their state court petition as derivative of claims that SBMC — not Appellees — had standing to prosecute.[58] Appellants characterize Appellees' causes of action for legal malpractice, breach of fiduciary duty, and violation of the DTPA as claims for

> (1) advising SBMC to file for Chapter 11 bankruptcy, rather than enforce SBMC's Rule 11 Agreement with Harborcove through an injunction, which allegedly was due to drafting errors in SBMC's Rule 11 Agreement; (2) for persuading McVey, as the president of SBMC, to permit Appellants to act as litigation counsel in the bankruptcy, which stripped Appellees of their ability to use Appellants as bankrutpcy counsel; and (3) failing to advise McVey and [M&C] about an arbitration provision in the retention agreement with JDKG.[59]

Appellants argue that the claim for failing to advise McVey and M&C about an arbitration provision in the retention agreement with JDKG

> is the only claim that is even arguably personal to McVey and M&C. For this reason, this claim is the only one that still requires remand to the state court so that Appellants can address it there. . . Other than this single claim, however, all others should have been dismissed. For this briefing, when Appellants request that 'all claims be dismissed,' [Appellants] mean[] all claims other than this one narrow cause of action.[60]

---

[58]Appellants' Opening Brief, Docket Entry No. 8, p. 3.

[59]Id. at 11-12.

[60]Id. at 12 n. 5 (acknowledging that "Appellants referenced this claim as one that still needed to be remanded in its first appeal to this Court." (citing March 21, 2016, Memorandum Opinion
(continued...)

Accordingly, Appellants ask this court to

> reverse the Bankruptcy Court's determination that
> Appellees had standing to bring clams based on the
> alleged diminution of value to SBMC or that required a
> showing of harm to SBMC. Furthermore, Appellants request
> that this court reverse the Bankruptcy Court's
> determination that the Release does not bar Appellees[']
> claims related to the advice for SBMC to file for
> bankruptcy as well as the claims related to Appellants[']
> request to become special counsel to SBMC after the
> filing of bankruptcy. Appellants request that the
> Bankruptcy Court's remand order be modified to only
> remand those claims related to Appellees' allegation that
> the Appellants did not fully disclose the existence of
> the arbitration provision in the GHEP and Harborcove
> retention agreements and dismiss all others.[61]

Appellants' argument shows that there is no dispute that the

Bankruptcy Court correctly remanded Appellees' direct causes of

action for lack of subject matter jurisdiction. At issue is

whether the Bankruptcy Court correctly concluded that Appellees

have standing to assert direct causes of action for

negligence/malpractice, breach of fiduciary duty, and violation of

the DTPA based on allegations that Appellants owed duties to

Appellees individually, Appellants breached duties owed to

Appellees individually, and as a result of those breaches Appellees

suffered personal injury and damages in the form of tax liens,

judgments, and attorneys fees incurred defending lawsuits filed

against them individually by the IRS and other SBMC creditors.

---

[60] (...continued)
and Order, Docket Entry No. 20 in Civil Action No. H-15-1173,
p. 10, Appellants' BROA, p. 1594 ("Appellants acknowledge that
'[o]ther narrower claims implied by the pleading are presumed to be
true for now and appear to still require remand.'")).

[61]Appellants' Opening Brief, Docket Entry No. 8, pp. 57-58.

1.  Applicable Law

A party's standing to sue is implicit in the concept of subject-matter jurisdiction and is not presumed; it must be proved. See Texas Association of Business v. Texas Air Control Board, 852 S.W.2d 440, 445-46 (Tex. 1993). See also Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992) (to establish standing a party must show an injury in fact traceable to the conduct of the defendant likely to be redressed by the relief sought).

> In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court. This parallels the federal test for Article III standing. . .
>
> Under Texas law, as under federal law, the standing inquiry begins with the plaintiff's alleged injury. The plaintiff must be *personally* injured — he must plead facts demonstrating that he, himself (rather than a third party or the public at large), suffered the injury . . . [The injury] must be concrete and particularized, actual or imminent, not hypothetical. . .
>
> The second element of the standing test requires that the plaintiff's alleged injury be fairly traceable to the defendant's conduct. . .
>
> The third element of standing requires that the plaintiff's alleged injury be likely to be redressed by the requested relief, and the plaintiff must demonstrate standing separately for each form of relief sought . . .
>
> The standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.

Heckman v. Williamson County, 369 S.W.3d 137, 154-56 (Tex. 2012) (citations omitted). Standing is a question of law for the court to decide, although facts necessary to the decision may need to be

decided by the factfinder. Id. at 150. Standing must exist for each claim asserted. Id. at 153. See also DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1867 (2006) ("a plaintiff must demonstrate standing for each claim he seeks to press").

Under Texas law "[a] corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong." Wingate v. Hajdik, 795 S.W.2d 717, 719 (Tex. 1990), superseded by statute on other grounds as stated in Sneed v. Webre, 465 S.W.3d 169, 185 n. 10 (Tex. 2015). In Wingate the Texas Supreme Court explained that

> [o]rdinarily, the cause of action for injury to the property of a corporation, or the impairment or destruction of its business, is vested in the corporation, as distinguished from its stockholders, even though it may result indirectly in loss of earnings to the stockholders. Generally, the individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock. This rule is based on the principle that where such an injury occurs each shareholder suffers relatively in proportion to the number of shares he owns, and each will be made whole if the corporation obtains restitution or compensation from the wrongdoer. Such action must be brought by the corporation, not alone to avoid a multiplicity of suits by the various stockholders and to bar a subsequent suit by the corporation, but in order that the damages so recovered may be available for the payment of the corporation's creditors, and for proportional distributions to the stockholders as dividends, or for such other purposes as the directors may lawfully determine.

Id. (quoting Commonwealth of Massachusetts v. Davis, 168 S.W.2d 216, 221 (Tex. 1942), cert. denied, 63 S. Ct. 1447 (1943) (recognizing that individual shareholders have no separate and

independent right of action for wrongs to the corporation that merely result in depreciation in the value of stock even though the harm may result indirectly in the loss of earnings to the shareholders)). A shareholder who seeks individual redress based on allegations of wrong done to a corporation has thus been held to lack standing. See Linegar v. DLA Piper, 495 S.W.3d 276, 279-80 (Tex. 2016). "To recover for wrongs done to the corporation, the shareholder must bring the suit derivatively in the name of the corporation so that each shareholder will be made whole if the corporation obtains compensation from the wrongdoer." Webre v. Sneed, 358 S.W.3d 322, 329-30 (Tex.App.—Houston [1st Dist.] 2011), aff'd Sneed, 465 S.W.3d at 169.

The Wingate Court clarified, however, that the general rule does not "prohibit a stockholder from recovering damages for wrongs done to him individually 'where the wrongdoer violates a duty arising from contract or otherwise, and owing directly by him to the stockholder.'" 795 S.W.2d at 719 (citing Davis, 168 S.W.2d at 222). The Texas Supreme Court recently reiterated this principle in Linegar, 495 S.W.3d at 279-80, explaining that "to recover individually, a shareholder must prove a personal cause of action and personal injury." Id. (quoting Davis, 168 S.W.2d at 222).

In Linegar the Texas Supreme Court held that a corporate stockholder who provided a loan to the corporation from his self-directed retirement account had standing to sue the corporation's

law firm for malpractice for incorrectly assuring the stockholder that the loan would be secured. 495 S.W.3d at 382. Linegar was a major stockholder in IdentiPHI, Inc. ("IdentiPHI"), and was also chairman, director, and majority stockholder in Zaychan PTY, Ltd. ("Zaychan"), the corporate trustee of the Linegar Superannuation Fund, an Australian self-managed retirement trust with Linegar and his wife as sole beneficiaries. Linegar arranged for Zaychan to make a bridge loan to IdentiPHI. In March 2008 IdentiPHI executed a promissory note to Zaychan granting a security interest in all of IdentiPHI's assets. The note had to be paid by June 29, 2008, to keep the self-directed retirement account in compliance with Australian law. DLA Piper represented IdentiPHI in the transaction. Linegar alleged that DLA Piper assured him in his individual capacity that the loan would be secured. When IdentiPHI filed for bankruptcy, however, Linegar learned that a UCC-1 financing statement had not been filed to perfect Zaychan's security interest in IdentiPHI's assets. If the security interest in the March 2008 note that IdentiPHI gave to Zaychan had been properly perfected, the full amount due on the note — approximately $1.67 million — would have bee recovered. Instead, only $150,000 was recovered. Id. at 277-78.

Linegar sued DLA Piper for negligence/malpractice based on the firm's assurances to him that the security interest would be perfected. A jury found in favor and Linegar and awarded damages.

Id. at 278. An appellate court reversed, ruling that Linegar lacked standing because Zaychan was the holder of the note. Id. The Texas Supreme Court reversed and remanded holding that Linegar had standing to sue DLA Piper for providing negligent advice to him in his individual capacity. Id. at 282. Reasoning that Linegar alleged he relied on DLA Piper's advice that the loan would be secure in deciding to direct Zaychan to make the loan, and that the failure to perfect the security interest caused a loss to him individually instead of to Zaychan because Zaychan was merely a trustee holding legal title to the account from which the loan was made and not the beneficiary of the account, the Texas Supreme Court held that the jury was entitled to find that DLA Piper had an attorney-client relationship with Linegar, DLA Piper breached duties owed to Linegar by virtue of that relationship, and DLA Piper's breach of duties owed to Linegar caused Linegar to suffer damages. In support of its holding the Linegar Court cited Murphy v. Campbell, 964 S.W.2d 265 (Tex. 1997). Id. at 280-82.

In Murphy the three major stockholders of Colonial Food Stores, Inc. ("Colonial") wanted to sell the business, but only if they could each net $2 million after taxes and other obligations. 964 S.W.2d at 267. The stockholders sought advice from Colonial's accountant and auditor, Touche Ross & Co. ("Touche Ross"), about the tax consequences of a sale. Based on advice from Touche Ross, the stockholders accepted a purchase offer from National Convenience Stores, Inc. Colonial then dissolved and distributed its assets and liabilities to the stockholders. When the

stockholders received formal deficiency notices from the IRS claiming that Colonial owed taxes from the sale of its assets, the stockholders settled with the IRS and then sued Touche Ross for malpractice. Touche Ross moved for summary judgment on several theories. The district court granted Touch Ross's motion without specifying the reasons. Plaintiffs appealed. Id. Finding that fact issues existed as to whether plaintiffs had individual claims against Touche Ross distinct from Colonial's claims, the appellate court remanded the plaintiffs' fraud claims and otherwise affirmed the district court's grant of summary judgment to Touche Ross. Id. at 268. Touche Ross argued to the Texas Supreme Court that the stockholders lacked standing because any wrong that may have done was to Colonial, not to the individual stockholders. Id. Citing Wingate, the Texas Supreme Court held that because Touche Ross counseled the stockholders directly and the tax consequences of the IRS ruling fell directly on them, they suffered a direct loss and therefore had standing to assert a claim separate from any claim that Colonial might have had against Touche Ross. Id.

The Texas Supreme Court's opinions in Wingate, Linegar, and Murphy demonstrate that Appellees have standing to prosecute direct claims in state court for which they allege facts capable of establishing that: (1) Appellants owed duties to Appellees individually; (2) Appellants violated those duties; and (3) those violations damaged Appellees.

2. <u>Application of the Law to the Appellees' Allegations</u>

(a) Negligence/Malpractice

Asserting that they had attorney/client relationships with the Appellants, Appellees allege that

> the following errors and/or omissions by Defendants in the underlying representation constitutes negligence:
>
> 1. Failure to diligently represent Plaintiffs.
>
> 2. Failure to preserve Plaintiffs' claims, rights and defenses.
>
> 3. Failure to protect Plaintiffs' interests.
>
> 4. Failure to render proper legal advice to Plaintiffs.

. . . Defendants fell below the standard of care for attorneys practicing law in Texas, and thus, Defendants' conduct was a proximate and/or producing cause of Plaintiffs' losses and damages.[62]

Legal malpractice is a tort cause of action based on negligence. <u>Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.</u>, 192 S.W.3d 780, 783 (Tex. 2006). Plaintiffs alleging legal malpractice must prove four elements: (1) the attorneys owed the plaintiffs a duty; (2) the attorneys breached that duty; (3) the breach proximately caused the plaintiffs' injuries; and (4) damages occurred. <u>Id.</u> <u>See also</u> <u>Gunn v. Minton</u>, 133 S. Ct. 1059, 1065 (2013) (recognizing that these are the elements needed to prove a legal malpractice claim under Texas law). At common law the rule

---

[62]Plaintiffs' Original Petition & Request for Disclosure, p. 9, Appellants' BROA, Docket Entry No. 2-2, p. 88.

of privity limited an attorney's liability to those in privity with the attorney. <u>McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests</u>, 991 S.W.2d 787, 792 (Tex. 1999). An attorney in Texas is therefore not liable for malpractice to anyone other than his client. <u>Id.</u> An attorney owes a duty of care to his client and is "held to the standard of care which would be exercised by a reasonably prudent attorney." <u>Cosgrove v. Grimes</u>, 774 S.W.2d 662, 664 (Tex. 1989). A litigation attorney's negligence causes damage to a client if the result the client would have obtained with competent counsel is more favorable to the client than the result actually obtained. <u>See</u> <u>Kelley & Witherspoon, LLP v. Hooper</u>, 401 S.W.3d 841, 847 (Tex. App.–Dallas 2013, no pet.). Malpractice damages "are the difference between the result obtained for the client and the result that would have been obtained by competent counsel." <u>Elizondo v. Krist</u>, 415 S.W.3d 259, 263 (Tex. 2013).

> (1) Appellees Have Alleged Facts Capable of Proving that Appellants Owed Duties to Them in Their Individual Capacities

Appellants argue that Appellees lack standing to assert claims against them for negligence/malpractice because those claims arise from advice provided to McVey in his representative capacity as president of SBMC and, therefore, are derivative of claims that originally belonged to SBMC and now belong to SBMC's Liquidating Trust. Appellees respond that Appellants mischaracterize their

claims as derivative because they are not suing for advice provided to McVey in his representative capacity as SBMC's president and are not seeking to recover the loss of their stock value. Appellees argue instead that they are suing Appellants for Appellants' failure to diligently represent them individually and are seeking to recover damages in the form of personal liability for tax liens, judgments, and attorneys fees incurred defending lawsuits filed against them in their individual capacities as guarantors of SBMC's debt.

Appellees allege that

Harborcove . . . filed suit on April 5, 2012 in Harris County, Texas against SBMC and McVey, personally, for repayment of the loan and further seeking injunctive relief.

Millard Johnson ("Johnson") and the law firm of Johnson DeLuca Kurisky & Gould, P.C. (the "Firm") (collectively "Defendants") agreed to represent SBMC and McVey, individually in the suit brought by Harborcove. Johnson and the Firm had a previous attorney-client relationship with SBMC, McVey as well as McVey's other company McVey & Co. Investments, LLC ("M&C"), and had represented them in at least one prior lawsuit in June 2011[, i.e., the GHEP Action]. . . .

After Defendants were retained by McVey and his entities SBMC and M&C, they agreed to accept service on their behalf in the Harborcove suit on April 17, 2012.[63]

Evidence presented to the Bankrutpcy Court undisputedly established that Appellants not only accepted service for McVey individually in the Harborcove Action, but also filed an answer for him and

---

[63]Id. at pp. 3-4, Appellants' BROA, Docket Entry No. 2-2, pp. 82-83.

continued to represent him individually in that action until August 9, 2013, over four months after the Bankruptcy Court approved SBMC's Plan on April 4, 2013. Appellees also allege — and Appellants do not dispute — that in addition to representing McVey individually in the Harborcove Action, Appellants represented both McVey individually and M&C in the earlier-filed GHEP Action. Under Texas law the attorney-client relationship can be created by an express contract or it can be implied from the actions of the parties. Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P., 105 S.W.3d 244, 254 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). See also Honeycutt v. Billingsley, 992 S.W.2d 570, 581 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). The allegations in the Appellees' state court petition are more than capable of establishing that Appellants had attorney/client relationships not just with SBMC but also with McVey individually and with M&C, and therefore owed duties directly to Appellees individually and not merely as SBMC's officers, shareholders, or contractors.

> (2) Appellees Have Alleged Facts Capable of Proving that Appellants Breached Duties Owed Directly to Them Individually

Appellants argue that they cannot be held liable to McVey or to M&C for advising McVey to put SBMC into bankruptcy because that advice was provided to McVey in his representative capacity as president of SBMC, and was not provided either to McVey or to M&C

-33-

individually. While Appellants cannot be held liable to McVey or to M&C for breaching duties owed only to SBMC, Appellants can be held liable to McVey and to M&C for breaching duties owed directly to them individually. <u>Wingate</u>, 795 S.W.2d at 719; <u>Linegar</u>, 495 S.W.3d at 279-80; <u>Murphy</u>, 964 S.W.2d 268-69.

In pertinent part Appellees allege that

Johnson erroneously advised McVey that SBMC needed to file Chapter 11 bankruptcy. Specifically, Johnson erroneously advised McVey that bankruptcy was the only option to forestall the foreclosure because Harborcove could simply sell the note to a third party who could then foreclose on the collateral. Johnson ultimately convinced McVey that a third party purchaser could hold the Trustees['] sale by virtue of Harborcove's filing, without the reposting by the third party. Such advice was erroneous.

It was known to Johnson, when he rendered such advice, that McVey had been under extreme duress due to his elderly mother suffering a fatal stroke and that McVey was tending to these needs in North Carolina. Nonetheless, on Sunday, April 29, 2012, McVey was advised by Johnson that there was no option other than bankruptcy and it had to be done the next day to prevent the foreclosure. As a result, McVey traveled back from North Carolina early to make the frantic deadline imposed by Johnson and was not given any opportunity to obtain a second legal opinion. Moreover, Johnson never explained to McVey the pros and cons of filing bankruptcy or the potential risks involved. Had such proper advice been rendered, and had McVey been fully advised of the potential risks, McVey would not have agreed to the filing of bankruptcy and would have required Johnson to file an injunction, temporary restraining order or some other action to enforce the Rule 11 Agreement and prevent the May 1, 2012 foreclosure.

. . .

After Johnson erroneously suggested that SBMC file for bankruptcy, he then persuaded McVey to allow him and the Firm to serve as SBMC's bankruptcy special counsel,

-34-

noting that the Firm was attempting to expand its practice in the field of bankruptcy. The real intent of Johnson was obvious: Johnson knew of SBMC's precarious financial situation and knew that the only way for him and his Firm to recover their significant past-due legal fees was to represent SBMC in the bankruptcy proceedings where their fees would be approved and paid out monthly in addition to the ability to generate substantial additional legal fees. . . Thus, Johnson saw the representation as a way to catapult his Firm's bankruptcy practice all the while disregarding the interests of SBMC, McVey, and M&C, the Firm's clients.

On April 30, 2012, Johnson filed the Chapter 11 bankruptcy for SBMC . . . Johnson's interests were furthered over those of McVey and SBMC when he convinced McVey to lobby the bankruptcy court to allow Johnson and his Firm to be hired as special counsel in the bankruptcy. At the time, Johnson did not explain to McVey that he would be giving up the previous relationship with Johnson and his firm because of the clear conflict. McVey did not understand that, by agreeing to have Johnson and the Firm serve in the bankruptcy, he would be left without his own individual counsel in all proceedings.[64]

If true, Appellees' factual allegations are capable of establishing that Appellants breached duties that they owed directly to Appellees as a result of their existing attorney/client relationship by failing to explain to McVey the pros, cons, and potential risks that filing a Chapter 11 petition for SBMC posed to him and to M&C in their individual capacities, and by failing to disclose to McVey that if the Bankruptcy Court allowed Appellants to serve as special bankrutpcy counsel to SBMC, McVey and M&C would be giving up their previous attorney/client relationship with Appellants because of a conflict, and McVey and M&C would be left without individual representation in the bankruptcy case and any related adversary proceedings.

---

[64]Id. at pp. 5-7, Appellants' BROA, Docket Entry No. 2-2, pp. 84-86.

> (3) Appellees Have Alleged Facts Capable of
> Proving that Appellants' Breaches Proximately
> Caused Direct Injury and Damages to Appellees

Appellees allege that

> McVey and M&C have been personally damaged as a result of
> the erroneous advice given by Johnson which drove SBMC
> into bankruptcy. . .
>
> After bankruptcy, the assets were liquidated . . .
> [V]arious creditors, including the Internal Revenue
> Service, were not paid from the bankruptcy funds. This
> caused the IRS to file a $1.4 Million lean against McVey
> personally. Aside from the IRS, various SBMC creditors
> filed lawsuits against McVey and M&C for over $1.2
> Million. These liens and lawsuits would not have
> occurred had Johnson not forced SBMC into bankruptcy
> through faulty advice.
>
> In sum, Johnson wrongfully advised McVey, his
> client, that he had no other option but to have the
> company in which he was 100% equity owner in file for
> bankruptcy. Johnson knew, or should have known, that
> this was not the only option as he had the Rule 11
> Agreement in place which would have prevented the pending
> foreclosure. To the extent that Johnson knew that the
> foreclosure would have to be re-posted if the note was
> transferred, such misrepresentations cannot be
> characterized as advice, judgment or opinion and were
> made knowingly and intentionally in order to get McVey to
> retain Johnson and his Firm as special bankruptcy
> counsel. As a result of Johnson's intentional
> misrepresentation (or negligent advice), McVey and M&C
> were personally damaged in excess of $10,000,000.[65]

If true, these factual allegations are capable of establishing

that Appellants' allegedly erroneous advice to McVey individually

and as representative of M&C that filing a Chapter 11 petition for

SBMC was the only means to prevent Harborcove from foreclosing on

---

[65]Id. at pp. 7-8, Appellants' BROA, Docket Entry No. 2-2,
pp. 86-87.

SBMC's assets in May of 2012 caused McVey to put SBMC into bankruptcy. Appellees allege that Appellants' erroneous advice caused them to suffer direct injuries and damages in the form of liability for tax liens, judgments, and personal attorneys' fees incurred defending the various lawsuits brought against them individually after SBMC's debts went unpaid in bankruptcy. Because damages in the form of tax liens, judgments, and attorneys fees arising from lawsuits filed against McVey and M&C individually by the IRS and other SBMC creditors are damages that are personal to McVey and M&C, Appellees have alleged facts capable of proving that Appellants' breach of duties owed to them individually caused them to suffer injury and damages that are personal and not merely derivative of injuries and damages suffered by SBMC.

### (4) Conclusion

Because Appellees' state court petition alleges facts capable of establishing that Appellants had attorney/client relationships with Appellees and therefore owed duties directly to Appellees individually, that Appellants breached duties owed to Appellees individually, and that Appellees thereby suffered injuries and damages that are personal to them and not merely derivative of injuries and damages suffered by SBMC, the court concludes that Appellees have alleged direct claims for negligence/malpractice against Appellants and that the Bankruptcy Court did not err by failing to dismiss these claims as derivative.

(b)  Breach of Fiduciary Duties

Appellees allege in their state court petition that

> Defendants are liable for breach of fiduciary duty.  At
> all times material, Defendants had a fiduciary
> relationship with Plaintiffs.  Thus, Defendants owed
> Plaintiffs various fiduciary duties, including the duty
> to act with loyalty and utmost good faith, duty of fair
> and honest dealing and to refrain from any self-dealing.
> Defendants breached their fiduciary duties owed to
> Plaintiffs by the acts and omissions stated herein.
> Specifically, Defendants placed their own interests ahead
> of Plaintiffs['] by advising SBMC to file for bankruptcy
> rather than enforce the Rule 11 Agreement in order to
> (1) ensure that their attorney's fees were paid; and
> (2) catapult the Firm's bankruptcy practice and ensure
> the payment of thousands of dollars in attorney's fees
> during the course of the bankruptcy proceedings.[66]

Appellees also allege that "[d]ue to Defendants' blatant and

intentional breach of fiduciary duty, Plaintiffs are entitled to

the disgorgement of fees and/or expenses paid to Defendants.  Thus,

Plaintiffs seek total fee forfeiture from Defendants."[67]

     An attorney has a fiduciary duty to his client as a matter of

law.  Willis v. Maverick, 760 S.W.2d 642, 645 (Tex. 1988).  The

fiduciary duty that an attorney owes to a client requires the

attorney "to render a full and fair disclosure of facts material to

the client's representation."  Id.  An attorney thus owes his

client a fiduciary duty of good faith, which includes absolute

candor, openness, and honesty, without concealment or deception.

Tanox, 105 S.W.3d at 253.

---

     [66]Id. at pp. 9-10, Appellants' BROA, Docket Entry No. 2-2,
pp. 88-89.

     [67]Id. at p. 12, Appellants' BROA, Docket Entry No. 2-2, p. 91.

The elements of a breach of fiduciary duty claim are (1) the existence of a fiduciary relationship (either as a matter of law or a matter of fact) and (2) a breach of the fiduciary duties by the attorney defendant (3) that causes (4) damage to the plaintiff. Abetter Trucking Co., Inc. v. Arizpe, 113 S.W.3d 503, 508 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (citing Avary v. Bank of America N.A., 72 S.W.3d 779, 792 (Tex.App.-Dallas 2002, pet. denied)). A long recognized equitable remedy for breach of a fiduciary duty is fee forfeiture. Arce v. Burrow, 958 S.W.2d 239, 246 (Tex.App.-Houston [14th Dist.] 1997, aff'd, in part, rev'd, in part on other grounds, 997 S.W.2d 299 (Tex. 1999) ("[W]e hold that fee forfeiture is a recognized remedy when an attorney breaches a fiduciary duty to his or her client."). Where a plaintiff seeks the remedy of fee forfeiture and proves his claim of breach of fiduciary duty, there is no requirement that he must prove causation or damages. Id. at 251 ("To be entitled to forfeiture, the client need only prove the existence of a breach; proof of causation and/or damages is not necessary. The amount of forfeiture, if any, is to be determined by the trial court, using the factors set out in this opinion."). Not every complaint that can be said to implicate a lawyer's fiduciary duties is actionable separately from a negligence claim. Because a lawyer's "standard of care in negligence claims is often defined by the characteristics of that inherent fiduciary relationship . . .

-39-

courts refer to the fiduciary relationship that the lawyer has to the client and use fiduciary standards to define the standard of care required of lawyers." <u>Murphy v. Gruber</u>, 241 S.W.3d 689, 696 (Tex.App.—Dallas 2007, pet. denied). "[C]ourts have most often applied those standards to conclude that the claims are really negligence, not breach-of-fiduciary-duty claims." <u>Id.</u> Breach of fiduciary duty by an attorney most often involves the attorney's "subordinating his client's interests to his own, retaining the client's funds, engaging in self dealing, improperly using client confidences, failing to disclose conflicts of interest, or making representations to achieve these ends." <u>Id.</u> at 693.

Because Appellees' state court petition alleges facts capable of establishing that Appellants had attorney/client relationships with McVey and M&C and therefore owed fiduciary duties directly to Appellees individually, that Appellants breached fiduciary duties owed to Appellees individually by failing to disclose that if Appellants were allowed to serve as special bankrutpcy counsel to SBMC, Appellees would be giving up their previous attorney/client relationship with Appellants because of a conflict, and that Appellees thereby suffered direct injuries and damages that are personal to them and not merely derivative of injuries and damages suffered by SBMC, the court concludes that Appellees have alleged direct claims for breach of fiduciary duty against Appellants, and that the Bankruptcy Court did not err by failing to dismiss these claims as derivative.

(c)  Texas DTPA Violations

Appellees allege that

> [p]ursuant to *Latham v. Castillo*, 972 S.W.2d 66, 68 (Tex.
> 1998), an express misrepresentation constitutes an
> unconscionable action or course of action that cannot be
> characterized as advice, judgment, or opinion, and thus
> violates the Texas Deceptive Trade Practices Act
> ("DTPA"). In this same regard, an attorney may be held
> liable to his client if he violates Section 17.49(c)(3)
> of the DTPA by engaging in an unconscionable action or
> course of action. Plaintiffs are consumers under the
> DTPA because they acquired goods or services from
> Defendants. Defendants violated the DTPA by engaging in
> false, misleading, unconscionable or deceptive acts or
> practices that the Clients relied upon to their
> detriment. Specifically, Defendants made express
> misrepresentations by advising McVey that bankruptcy was
> his only option when Defendants knew that this was not
> true in light of the Rule 11 Agreement. Plaintiffs will
> show that Defendants' conduct, as described herein, was
> committed knowingly and intentionally as those terms are
> defined by the DTPA. Moreover, the conduct described
> herein constitutes an unconscionable action or course of
> action that cannot be characterized as advice, judgment
> or opinion. Accordingly, Defendants are liable to
> Plaintiffs for additional damages as provided by the
> DTPA, including treble damages and reasonable attorneys'
> fees necessary to bring this cause of action, all of
> which are being sought herein.[68]

The Texas DTPA is a consumer protection law that prohibits

"[f]alse, misleading, or deceptive acts or practices in the conduct

of any trade or commerce . . ." Tex. Bus. & Com. Code Ann.

§ 17.46(a). A consumer may maintain an action under the Texas DTPA

if the defendant engaged in false, misleading, or deceptive acts

and these acts constituted a producing cause of the consumer's

damages. Tex. Bus. & Com. Code Ann. § 17.50(a)(1). See also Doe

---

[68]*Id.* at p. 10, Appellants' BROA, Docket Entry No. 2-2, p. 89.

v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995) (enumerating the elements of DTPA actions as: (1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages).

Appellees allege that Appellants violated the DTPA when, prior to McVey's agreeing to put SBMC into bankruptcy, they told him that bankruptcy was the only option to avoid foreclosure on SBMC's assets when Appellants knew that this was not true in light of the Rule 11 Agreement. Because Appellees' state court petition alleges facts that, if true, are capable of establishing Appellants had attorney/client relationships with McVey and M&C who acquired legal services from Appellants and can therefore be considered consumers under Texas law, that Appellants engaged in false, misleading, or deceptive acts by telling McVey that bankruptcy was the only option to avoid foreclosure on SBMC's assets, and that this deception was a producing cause of damages that were personal to Appellees and not merely derivative of injuries and damages suffered by SBMC, the court concludes that Appellees have alleged facts capable of establishing direct claims for violation of the Texas DTPA against Appellants, and that the Bankruptcy Court did not err by failing to dismiss these claims as derivative.

**B.    The Bankruptcy Court Did Not Err by Failing to Conclude that the Appellees' Direct Claims Are Barred Under the Release Language of the Confirmed Plan**

On April 4, 2013, the Bankruptcy Court confirmed the Amended Plan of Liquidation in SBMC's bankrutpcy case.[69] The Plan created a Trust to liquidate the Debtor's assets, and contained the following Release of Exculpated Persons:

> 13.4. Releases and Limitation of Liability of Exculpated Persons.  The Exculpated Persons shall not have or incur any liability to any Person for any act taken or omission made in good faith in connection with or in any way related to negotiating, formulating, implementing, confirming, or consummating this Plan, the Disclosure Statement or any contract, instrument, filing with governmental agencies, release, or other agreement or document created in connection with or related to this Plan, any prior plan or disclosure statement of the Debtor, or the administration of the Bankruptcy Case, nor with respect to any liability, claim or cause of action, whether known or unknown, asserted or unasserted, belonging to or assertable by the Debtor, the Estate, or the Liquidating Trustee against the Exculpated Persons, from the beginning of time until the Effective Date unless the act is found to be in violation of the Bankruptcy Code, State Law or Federal Law.   The Exculpated Persons shall have no liability to any Person for actions taken in good faith under or relating to this Plan or in connection with the administration of the Bankruptcy Case including, without limitation, failure to obtain confirmation of this Plan or to satisfy any condition or conditions precedent, or waiver of or refusal to waive any condition or conditions precedent to Confirmation or to the occurrence of the Effective Date. Further, the Exculpated Persons shall not have or incur any liability to any Person for any act or omission in connection with or arising out of their administration of this Plan.   The releases contained in this paragraph do

---

[69]Order Confirming First Amended Plan of Liquidation by the Official Committee of Unsecured Creditors and Joint Plan of Liquidation of the Committee and SBMC Healthcare, LLC, Appellants' BROA, Docket Entry No. 2-2, pp. 4,527-49.

not apply to violations of the Bankruptcy Code, egregious conduct, gross negligence or willful misconduct as determined by the Bankruptcy Court. The Committee Members and its Counsel are fully exculpated from any and all claims.[70]

Appellants have argued throughout this case that the Plan's Release barred all the claims alleged in the Appellees' state court petition. Acknowledging that Appellants are "professionals employed in the Bankruptcy Case" due to their role as special bankruptcy counsel for SBMC, and thus are "Exculpated Persons" to whom the protections of the release apply, the Bankruptcy Court nevertheless concluded that the release does no bar the direct claims asserted in the Appellees' state court petition. The Bankruptcy Court initially reasoned that

> [b]ecause the Provision exculpates acts or omissions in connection with the Debtor's "Plan" and "Bankruptcy Case," exculpatory protection necessarily relies on the existence of the Debtor's bankruptcy case. Thus, as drafted, the Exculpatory Provision only limits the liability of Defendants beginning from the Petition Date going forward. Because the Provision is effective exclusively as to post-petition events, it does not bar Plaintiffs' causes of action that form the substance of this Adversary Proceeding. Plaintiffs' lawsuit is based on events that occurred **prior** to the Debtor's bankruptcy — namely, Defendants' failure to properly draft and enforce a Rule 11 agreement and Defendants negligently advising McVey to file a Chapter 11 petition for SBMC. Because Plaintiffs' lawsuit is based on pre-petition events and the Exculpatory Provision only immunizes Defendants from post-petition acts or omissions, the Provision is ineffective to bar this Adversary Proceeding.[71]

---

[70]First Amended Plan of Liquidation by the Official Committee of Unsecured Creditors and Joint Plan of Liquidation of the Committee and SBMC Healthcare, LLC, pp. 34-35, Appellants' BROA, Docket Entry No. 2-2, pp. 3,868-69.

[71]September 18, 2014, Memorandum Opinion, pp. 11-2, Appellants' BROA, Docket Entry No. 2-2, pp. 266-67. See also In re SBMC, 519

The Bankruptcy Court acknowledged that "[t]he Exculpatory Provision includes language that attempts to discharge pre-petition claims,"[72] but concluded that language "fails for overbreadth under Texas law."[73]   Although the Bankruptcy Court subsequently reopened the Adversary Proceeding to reconsider this issue, the Bankruptcy Court ultimately reached the same conclusion, i.e., that

> the Exculpatory Provision does not encompass the pre-petition communications between McVey and Johnson concerning the latter's advice to the former to file the bankruptcy petition on behalf of SBMC.   Thus, the Exculpatory Provision does not bar the Plaintiffs from prosecuting the Malpractice Claim for Filing against the Defendants.[74]

Appellants argument that the Plan's Release bars the claims asserted in Appellees' state court petition is based on their contention that those claims arise from advice given to SBMC to file bankruptcy.   Their argument is grounded on undisputed Texas law that shareholders lack standing to prosecute claims derived from wrongs done to a corporation, i.e., shareholders lack standing to assert derivative claims individually.   The Bankruptcy Court has not only acknowledged this undisputed tenant of Texas law but also

---

B.R. at 181.

[72]Id. at n. 3.

[73]Id.

[74]Amended Findings of Fact and Conclusions of Law, Exhibit 4 to Notice of Filing of an Appeal, Docket Entry No. 1-5, p. 13; Appellants' BROA, Docket Entry No. 2-2, p. 1,683.

dismissed the derivative claims asserted in Appellees' state court petition for this reason.[75]  The Bankruptcy Court explained:

> The Court will grant, in part, the Motion to Dismiss, and dismiss with prejudice the causes of action alleging injury due to devaluation of SBMC Stock.  Plaintiffs lack standing to bring these derivative actions as they belong exclusively to SBMC's estate (i.e. the Trust).[76]

Appellants' do not dispute that the Plan's Release Language is not applicable to pre-petition advice given to Appellees individually.  Instead, Appellants argue that

> Appellees fail to cite any evidence of advice given to them *individually*.  The legal advice at issue was rendered to SBMC and concerned whether SBMC should file bankruptcy.  McVey as an *individual* did not have the power to put SBMC into bankruptcy, only its President and CEO could do that.  Thus, to the extent McVey was involved, it was only in his capacity as the President and CEO of the debtor.[77]

Appellants' argument fails to recognize that Appellees allege — and Appellants do not dispute — that both before and after filing SBMC's Chapter 11 petition, Appellants had attorney/client relationships not only with SBMC and McVey in his representative

_____

[75]September 18, 2014, Order of Partial Dismissal and Remand, Exhibit 1 to Notice of Filing of an Appeal, Docket Entry No. 1-2, p. 2 ("ORDERED that the Defendants' Motion to Dismiss is granted in part, and all causes of action brought by the Plaintiffs alleging injury due to devaluation of SBMC stock are dismissed with prejudice to refiling by the Plaintiffs[.]").  See also Appellants' BROA, Docket Entry No. 2-2, p. 291.

[76]September 18, 2014, Memorandum Opinion, p. 33, Appellants' BROA, Docket Entry No. 2-2, pp. 288.  See also In re SBMC, 519 B.R. at 193.

[77]Appellants' Reply Brief, Docket Entry No. 14, pp. 20-21.

-46-

capacity as SBMC's president and CEO, but also with McVey and M&C in their individual capacities. For the reasons stated in the preceding section, the court has already concluded that the Appellees' state court petition asserts direct claims for negligence/malpractice, breach of fiduciary duty, and violation of the Texas DTPA because the petition alleges facts that, if true, are capable of proving that (1) Appellants had attorney/client relationships with Appellees in their individual capacities; (2) Appellants breached duties owed directly to Appellees as a result of those attorney/ client relationships by failing to explain to McVey the pros, cons, and potential risks that filing a Chapter 11 petition for SBMC posed to him and to M&C in their individual capacities, and by failing to disclose to McVey that if the Bankruptcy Court allowed Appellants to serve as special bankrutpcy counsel to SBMC, McVey and M&C would be giving up their previous attorney/client relationships with Appellants because of conflicts, and would be left without individual representation in the bankruptcy case and any related adversary proceedings; and (3) Appellants' alleged breaches of duties owed directly to Appellees caused Appellees to suffer both injuries and damages that are personal to them and not merely derivative of injuries and damages suffered by SBMC.

Because Appellants do not argue and the court does not find that the breaches of duties owed to Appellees individually alleged

in Appellees' state court petition are "actions taken in good faith under or relating to [SBMC's Confirmed] Plan or in connection with the administration of the Bankruptcy Case," the court concludes that the Bankruptcy Court did not err by failing to conclude that the direct claims alleged in Appellees' state court petition are barred under the Release Language of the Confirmed Plan. Because the court reaches this conclusion based on the plain language of the release in the Confirmed Plan as written, the court need not reach and expresses no opinion on the Appellants' second issue on appeal, i.e., "[d]id the Bankruptcy Court err in applying in its application of state law considerations to create artificial barriers to the application of the release language of the Confirmed Plan as written?"

## IV.  **Conclusions and Order**

For the reasons stated above, the court concludes that the Bankrutpcy Court did not err by failing to dismiss all of Appellees' claims as derivative, or by failing to dismiss Appellee's claims as barred under the release language of the Confirmed Plan. Accordingly, the September 18, 2014, Order: (1) Granting in Part and Denying in Part the Defendants' Motion to Dismiss; (2) Denying the Trust's Motion to Intervene in Its Entirety; (3) Granting in Part and Denying in Part the Plaintiffs' Motion for Remand (Adversary Docket Entry No. 46), is **AFFIRMED**; the

October 30, 2014, Order: (1) Granting in Part and Carrying in Part Defendants' Motion to Amend or for Clarification of Judgment of Partial Dismissal and Remand Order Pursuant to Bankr. R. Pro. 9023; (2) Reopening the Record to Allow the Parties to Introduce Exhibits and Adduce Testimony; and (3) Setting a Hearing for 9:30 A.M. on December 12, 2014 (Docket Entry No. 55), is **AFFIRMED**; the September 21, 2016, Order Denying in Its Entirety the Defendants' Motion to Amend or for Clarification of Judgment of Partial Dismissal and Remand Order Pursuant to Bankr. R. Pro. 9023 (Adversary Docket Entry No. 121), is **AFFIRMED**; and the September 26, 2016, Amended Findings of Fact and Conclusions of Law Regarding the Defendants' Motion to Amend or for Clarification of Judgment of Partial Dismissal and Remand Order Pursuant to Bankruptcy Rule 9023 (Adversary Docket Entry No. 124), is **AFFIRMED**.[78]

    **SIGNED** at Houston, Texas, on this __11th__ day of May, 2017.

SIM LAKE<br>
UNITED STATES DISTRICT JUDGE

---

[78]The court has allowed the parties extraordinary leeway in submitting lengthy briefs and other written materials in connection with the pending motions. As the length of this Memorandum Opinion and Order indicates, the court has expended considerable time reading these papers and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments. While, because of the sheer volume of information presented, it is not impossible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this Memorandum Opinion and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion. Accordingly, the court strongly discourages the parties from seeking reconsideration based on arguments they have previously raised or that they could have raised.